James **GRAYSON** et al., Appellants,

v.

James I. **DUNN**, Jr., et al., Appellees.

No. 5955.

Court of Civil Appeals of Texas, Waco.

May 10, 1979.

Rehearing Denied June 7, 1979.

Bernard C. Reeves, Reeves, Jackson & Bournias, P. C., Fairfield, for appellants.

Mac L. Bennett, Jr., Bennett & Bennett, Normangee, W. A. Keils, Jr., Teague, for appellees.

HALL, Justice.

This is a trespass to try title action over 27.62 acres of land located in the F. C. Booker Survey, in Leon County, Texas, and presently possessed by defendants. Plaintiffs claimed record title and also title by adverse possession. The suit was filed on October 3, 1972. Trial was to a jury in December, 1977. Judgment was rendered that plaintiffs take nothing. Plaintiffs appeal. We affirm the judgment.

Plaintiffs are the surviving heirs at law of Bill Grayson, deceased. They are James Grayson; O. G. Grayson; Beulah Mae Hall (whose husband is also joined as plaintiff); Frances Stell Thomas; and Bessie Grayson, the widow of Bill Grayson. Defendants originally were James I. Dunn, J. H. Buchanan, and R. L. Oden. Mr. Oden died before the case was tried, and Naelyn Oden Hinton and Jack Hinton, in their capacities as independent executors of Oden's estate, were substituted in his place as defendants.

Plaintiffs and defendants claim record title to the tract in question. They stipulated that Haymon Haynes was their common source.[1]

Defendants' chain of record title is: (1) Haymon Haynes to The Jewett State Bank, by general warranty deed dated August 6, 1929; (2) The Jewett State Bank, by and through its liquidating trustees, to defendant J. H. Buchanan, by special warranty deed dated September 15, 1952; (3) conveyance of an undivided one-half interest by J. H. Buchanan to defendant R. L. Oden, by special warranty deed dated December 1, 1952; and (4) conveyance of only the surface estate by Buchanan and Oden to de-

---

1. For the factual development of the parties' common source of record title see *Haynes v. Dunn*, 518 S.W.2d 880 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.) which was a controversy between plaintiffs' relatives and these defendants over an adjoining tract of 30 acres.

fendant Dunn, by general warranty deed dated March 27, 1968.

Plaintiffs' chain of record title is: (1) Haymon Haynes to R. B. Adams, by general warranty deed dated December 16, 1929; (2) R. B. Adams to Bill Grayson, by general warranty deed dated August 27, 1948; (3) the death of Bill Grayson on March 12, 1964. The record does not show whether Bill Grayson died testate or intestate, but it is not questioned in the record that, as between our parties, plaintiffs are entitled to the property if Mr. Grayson owned it at his death.

Plaintiffs pleaded that the purported deed dated August 6, 1929, from Haymon Haynes to The Jewett State Bank, upon which defendants' title is based, was in fact intended as a mortgage, and that they therefore held superior record title. They also alleged that they and their predecessors had matured title to the land by adverse possession and use under the ten-year statute of limitation, prior to the time this suit was filed on October 3, 1972.

Defendants denied plaintiffs' claims and alleged they were innocent purchasers for value without notice of any infirmity or defect in their title asserted by plaintiffs.

The jury made the following answers to the special issues:

1. Failed to find that the deed from Haymon Haynes to The Jewett State Bank, dated August 6, 1929, was intended as a mortgage.
2. Failed to find that "the plaintiffs and those under whom they hold and claim had and held peaceable, adverse and continuous possession of the 27.62 acres of land, . . . cultivating, using or enjoying the same, openly notoriously and adversely for any period of ten (10) consecutive years or more prior to the 3rd day of October, 1972."
3. (This issue, conditioned upon an affirmative answer to issue 2, was not reached by the jury).
4. (A) and (B). Found that (A) when R. B. Adams purchased the tract from Haymon Haynes, and (B) when Bill Grayson purchased the land from R. B. Adams, neither Adams nor Grayson at the time of his purchase had "actual or constructive notice of any equity, claim or title of Defendants or those under whom they claim."
5. (A), (B) and (C). Found that (A) when defendant J. L. Buchanan purchased the tract from The Jewett State Bank, and (B) defendant R. L. Oden purchased from Buchanan, and (C) when defendant Dunn purchased from Buchanan and Oden, none of the defendants at the time of his purchase had "actual or constructive notice of any equity, claim or title of Plaintiffs or those under whom they claim."

Defendants moved the court to disregard the jury's answer to special issue 4 on the ground that it was immaterial in the light of the answers to issues 1 and 2, and to render judgment for them on the remainder of the verdict. The motion was granted, the answer to issue 4 was disregarded, and judgment was rendered on the remainder of the verdict that plaintiffs take nothing and that defendants recover title and possession to their respective interests in the land.

Plaintiffs assert that the evidence established their claim of ten years' adverse possession as a matter of law, or, in any event, that the jury's failure to find for them on that issue was against the great weight and preponderance of the evidence. We overrule those contentions.

Plaintiffs' claim of adverse possession was based upon the testimony of plaintiff James Grayson. The essence of his testimony was this: Bill Grayson was my father. In May, 1949, when I was twenty, my father and I began fencing the land in question. Working evenings and weekends, we completed the fence in about three months. After we completed the fence to my father's satisfaction, we "run a little few cows, what few we had," on the land. "To the best of my knowledge" we had cows on this land each and every year after that "for a portion of the time." Normally, it

would be about six or seven months of the year "at the most. I farmed a little bit on the Hinson place up until 1960. After I gathered the crop we would move these cows back there for the winter, so I would consider about seven months." We kept the fences patched up "in fair condition." When we removed the cows each year we didn't give up possession to anyone else or intend to abandon the land. It was done with the intention to keep the land and use it in the future, as we did. When the cows were off the land we would attend to the fences which we kept up "in fair shape." We also cut firewood off the place. After the 1960 season we didn't carry the cows back. After my father died in 1964 none of us went back onto the land. I knew that the defendant James I. Dunn took possession of the land early in 1968 and constructed a fence around it and began to graze cattle on it. Although I saw him many times after that, I did not tell him "this is my land" or "don't you fence my land" or "I want my land."

■ It is the general rule that the testimony of a party or of any witness interested in the result of the case, even where uncontradicted, does not establish a fact as a matter of law because the credibility of the witness is still at issue for the fact-finder's determination. *Collora v. Navarro*, (Tex.1978) 574 S.W.2d 65, 69. In *Collora* the Court recognized the exception to the general rule, applicable under proper circumstances, where the testimony of an interested party or witness "pertains to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally devoid of inconsistencies and contradictions, and is uncontradicted either by the testimony of other witnesses or by circumstances—in short, when there is nothing to cause any reasonable suspicion as to its truth"; and said that the general rule may not, therefore, be applied "in a cut-and-dried fashion," but that its application "must turn on the facts of each case." Several factors were set forth in the opinion for consideration in determining the application of the general rule.

■ We need not detail all of James Grayson's testimony on the limitation issue. In the light of the guidelines stated by our Supreme Court in *Collora*, it is our view and holding that his testimony simply was not of the probative quality necessary to lift it from application of the general rule. Considering the whole record, we also hold the jury's failure to find for plaintiffs on the question was not against the great weight and preponderance of the credible evidence.

Under the express wording of special issue 2 the jury were required to find, for an affirmative answer, that the adverse possession relied upon by plaintiffs must have been "continuous possession" for the full term of ten consecutive years. This requirement was also set forth in the court's definitions of "peaceable possession" and "adverse possession" which accompanied the special issue. In the light of James Grayson's testimony that he and his father kept their cows off the land for five months of each of the years in question, plaintiffs requested the following explanatory instruction to the jury in connection with the term "continuous possession" as used in the special issue:

"A temporary vacancy unaccompanied by an intention to abandon the premises will not interrupt continuous possession as that term is used herein."

The request was refused. Plaintiffs assign error to the ruling. The complaint is overruled.

■ The continuous possession of land by an adverse holder required under the limitation statute is interrupted by a temporary vacancy, unless the duration of the vacancy is reasonable under the existing circumstances and is made under circumstances which reasonably show that the adverse holder did not intend thereby to abandon the premises. *Dunn v. Taylor*, 102 Tex. 80, 113 S.W. 265, 267; *Hardy v. Bumpstead*, 41 S.W.2d 226 (Tex.Com.App.1931). See also, *Hawkins v. Rudco Oil & Gas Co.*, 187 S.W.2d 230, 234 (Tex.Civ.App.—Texarkana 1945, writ ref'd w.m.); *Halsey v. Humble Oil & Refining Co.*, 66 S.W.2d 1082, 1084 (Tex.Civ.App.—Beaumont 1933, writ dism.).

Rule 279, Vernon's Tex.Rules Civ.Proc., provides in part that the court's failure to submit a definition or explanatory instruction shall not be a ground for reversal of the judgment "unless a substantially correct definition or explanatory instruction has been requested" by the complaining party.

Defendants have not contended that the annual vacancies in question were unreasonable as a matter of law, and we do not decide that question. At least, under the evidence, a fact question for the jury was raised as to the reasonableness of their duration and as to whether they were made under circumstances reasonably consistent with an intention not to abandon the land. Plaintiffs' requested instruction did not incorporate those essential elements of reasonableness. It would have permitted a finding in plaintiffs' favor without consideration of those elements. Therefore, it was not in substantially correct form. Under Rule 279, plaintiffs cannot properly seek reversal on the court's failure to give the instruction.

Plaintiffs' remaining complaints are also without merit under the record. They are overruled.

The judgment is affirmed.