### GIBSON et al. v. BERRY CEMETERY ASS'N.
### No. 14562.

Court of Civil Appeals of Texas. Dallas.
June 6, 1952

Sanford, King, Estes & Cantwell, Dallas, Tex., and Keith & Brown, Sherman, Tex., for appellants.

A. V. Grant, Saint Jo, Tex., for appellee.

CRAMER, Justice.

This is an action in trespass to try title filed in the trial court by appellee Berry Cemetery Association, acting through J. M. Hudson, J. A. Davis, and H. C. Lewter as Trustees, against appellants, the suit involving two acres of land in the S. Carmena, sometimes called the S. Carman and/or S. Carmond, Survey in Grayson County,—which two acres is composed of two tracts, the tract on the west side being a graveyard, and the tract on the east side once a church and school site; the two tracts being separated by a wire fence. It was stipulated that there were no graves on the east side.

On the trial the jury, after appellants' motion for instructed verdict was overruled, entered a special verdict favorable to appellees and thereafter the court rendered judgment vesting title in appellants to the cemetery tract, but decreeing that appellees as trustees of Berry Cemetery Association recover in trust for such Association the possession of such cemetery tract, and that appellees as Trustees of the Berry Cemetery Association recover both title and possession of the church and school tract. Gibson et al. have duly perfected this appeal from such judgment, briefing fourteen points of error.

Appellees did not file a brief.

### Opinion

In considering this appeal, under the rules we accept as correct appellants' statement of the facts and the record, since

no brief has been filed by appellee. Rule 419, Texas Rules of Civil Procedure.

The chain of title from the State is not shown, but it was stipulated that J. G. Hodges had fee simple title to the land on May 10, 1861 and on that date he deeded to W. S. Tackett, J. P. Johnson, and P. B. Taylor, Trustees of the "Church house and schoolhouse and burying ground of Beat No. 5" the two-acre tract of land in controversy, but said estate, as conveyed, was limited in the deed itself to "so long as the church and school remain there."

The parties also stipulated that the church and schoolhouse were abandoned and ceased to remain on the two acres involved, and have not been on said tract of land, nor have they been rebuilt or replaced thereon, since 1872 or 1873. J. G. Hodges died in 1902 and his duly probated will left all his property to appellant Jessie App Hodges, his grandson. It was also stipulated that the land was divided into two tracts, separated by a fence; the tract on the east side was used as a church (Baptist), and the schoolhouse site, the one on the west, as a public cemetery; that both said church and schoolhouse have long since been removed and there are no graves on the east side of the fence; that the west side, or tract, is devoted to an old public graveyard. On December 3, 1867, when Hodges conveyed the larger tract, out of which the two acres was carved, he expressly excepted, and did not therein convey the two-acre tract.

It was undisputed that there were oil wells in the area of the property, one about 1,000 feet from the two-acre tract here involved. On November 22, 1950 Jessie App Hodges and wife made a deed to R. W. Gutzler covering the two-acre tract and reserved a royalty of ¼ of ⅛ of the oil and gas which might be produced and saved from such land; which interest Gutzler conveyed to appellant H. F. Gibson on November 24, 1950.

On December 10, 1950 eight persons, among whom were some of the relatives of some of the deceased persons interred in the graveyard tract, held a meeting, and, using the name Berry Cemetery Association for the first time said name had ever been used, passed a resolution attempting to elect three of their number as Trustees of such newly named Berry Cemetery Association, and attempted to authorize the Trustees to sell to one Roy A. Stamps an oil and gas lease on all of the two-acre tract,—both the graveyard and the church and school tracts. Pursuant to such resolution, three men, named as Trustees at such meeting, did, in the name of Berry Cemetery Association, execute and deliver an oil and gas lease and a mineral royalty deed to the said Stamps. There was no deed to any one, or more, of the eight persons attending the meeting, or to the Berry Cemetery Association, covering either the cemetery or the church and school tract. The name, Berry Cemetery Association, was adopted by said group of eight at the meeting. There were no by-laws or rules for the government of the Association, no books, no list of members, no officers, and no dues therefor. The cemetery was admittedly a public one, where anyone could be buried; where no lots were ever sold and no fees were ever charged. There are over one hundred deceased persons buried in the graveyard, but no evidence was introduced that any of the relatives of any of such deceased persons interred in the graveyard were notified of the meeting, except those of the eight present who were relatives of some of such deceased persons.

The above record, in our opinion, shows no title in the trustees named, or in the Berry Cemetery Association, or in any of the eight persons who held the meeting and appointed such trustees and created such Berry Cemetery Association.

█ In a suit in trespass to try title, plaintiffs have the duty and the burden to show title in themselves, in order to recover. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, and cases there cited. This rule is so well settled that it needs no further citation.

█ It is also the settled law in this State that a living person who has relatives buried in a graveyard is not, by reason of that single fact, thereby vested with title to the land on which such relative is buried,

602

or with any right therein other than that of visitation, ornamentation, and the protection of the graves of such relatives as are buried thereon from desecration; Bockel v. Fidelity Dev. Co., Tex.Civ.App., 101 S. W.2d 628; Meadows v. Edwards, Tex.Civ. App., 116 S.W.2d 831, writ ref.; 20 Texas Law Review 241–244.

■ Under such holdings, the fee simple title to that portion of the two-acre tract which was used for a public cemetery is, as a matter of law, vested in appellants, subject only to the right or easement of the relatives of the deceased persons interred therein to visit the graves of such relatives, erect monuments thereon, and to provide other reasonable ornamentation thereof, and to protect such graves from wrongful desecration. As to that portion of the two-acre tract which was originally used for church and school purposes and thereafter abandoned, the title, as a matter of law, reverted to and is now vested in appellants; and appellee has no interest or title therein, either by deed, or by, through, or under the statute of limitation. Cook v. Winter, Tex.Civ.App., 207 S.W.2d 145, error ref.; Dunn v. Taylor, 102 Tex. 80, 113 S.W. 265; Heard v. State, 146 Tex. 139, 204 S.W.2d 344; Hardy v. Bumpstead, Tex. Com.App., 41 S.W.2d 226, 76 A.L.R. 1488.

It follows from the above that the trial court erred in not sustaining appellants' motion for an instructed verdict at conclusion of the testimony and in not rendering judgment for appellants for the title and possession of the school tract and for the title to the cemetery tract, subject only to the easement above set out in favor of such of the appellees as are relatives of deceased persons buried thereon, as well as being subject to such an easement in favor of the relatives of all deceased persons interred therein.

Such holdings make other points asserted by appellants immaterial here.

The judgment below is, as hereinabove indicated, reversed and judgment is here rendered for appellants as indicated, and it is so ordered.

BOND, C. J., not sitting.