Opinion issued April 3, 2008









 



     



In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00457-CV




SAMPSON THOMPSON, JR., EARLINE THOMPSON, and GORDON RAY
JOHNSON, Appellants

V.

SAM A. WINKELMANN, JR., INDIVIDUALLY AND AS TRUSTEE OF
THE FANNIE GAYLE WINKELMANN TRUST, JOHN WINKELMANN,
GINGER WINKELMANN, and MANUEL VARGAS, JR., Appellees




On Appeal from the County Court of Law No. 3 and Probate Court
Brazoria County, Texas
Trial Court Cause No. 17918A


 


MEMORANDUM OPINION

          Appellants Sampson Thompson, Jr., Earline Thompson, and Gordon Ray
Johnson (collectively “the Thompsons”), appeal from the trial court’s judgment
declaring that a right of ingress and egress to Island Cemetery exists over real
property that the Thompsons do not own, but in which they have an interest. The
Thompsons filed suit against appellees, Sam A. Winkelmann, Jr., inividually and as
Trustee of the Fannie Gayle Winkelmann Trust, John Winkelmann, Ginger
Winkelmann, and Manuel Vargas, Jr. (collectively “the Winkelmanns”), (1) seeking
a declaration of the right of ingress and egress over the property owned by the
Winkelmann Tust and the right for their family to make future burials in the cemetery
and (2) asserting claims for damages for intentional infliction of emotional distress, 
invasion of privacy, trespass, assault, tortious interference with an existing contract,
breach of fiduciary duty, and negligent misrepresentation. In three issues, the
Thompsons assert that the trial court erred (1) by granting partial summary judgment
prior to trial in favor of the Winkelmanns because the trial court granted relief on
grounds not mentioned in the Winkelmanns’ motion for summary judgment; (2) by
admitting evidence that had not been produced during discovery or supplemented
prior to the trial; and (3) by granting relief to the Winkelmanns that was not
authorized by law. We conclude that the trial court did not have authority to enter the
judgment encumbering the Thompsons’ land with the right of ingress and egress to
Island Cemetery. We reverse and remand to the trial court.
BackgroundThis dispute concerns access to Island Cemetery. Island Cemetery is
approximately one acre in size and is located on land that was purchased by Ned
Thompson in 1879. Relatives and descendants of Ned Thompson are buried in Island
Cemetery. In 1951, a portion of the Ned Thompson land, including Island Cemetery,
was sold to Fannie Gayle Winkelmann and is currently owned by the Fannie Gayle
Winkelmann Trust, of which appellee, Sam Winkelmann, Jr., is trustee. The
remaining Ned Thompson land is owned by the Ned Thompson Estate, in which the
Thompsons and other relatives have an interest.
          There is no public ingress or egress available for the cemetery. In the past,
visitors to the Island Cemetery used a route through the Winkelmanns’ property. The
past route to the cemetery began at the Winkelmanns’ gate on County Road 450 in
Brazoria county, went past the houses of Sam Winkelmann and his brother, past some
barns, and through a pasture that led to the cemetery.
          Prior to appellee, Sam Winkelmann, Jr., acting as trustee for the Winkelmann
Trust, his father, Sam Winkelmann, Sr., held that position. Sam Winkelmann, Sr.,
allowed reasonable access to Island Cemetery until the father of appellant, Sampson
Thompson, filed suit against him in 1988. Access to the cemetery was later restricted. 
In 2003, the Thompsons and others attempted to visit Island Cemetery by setting out
across the Winkelmann’s property. However, Sam Winkelmann, Jr., blocked access
to the cemetery by driving a large grader into the path appellants were attempting to
take. One of the people attempting to visit the cemetery called the sheriff’s office, 
which resulted in permission for the Thompsons and the other visitors to make a brief
visit to the cemetery.
          This suit was filed in December 2004 by the Thompsons and other plaintiffs,



seeking a declaration under the Uniform Declaratory Judgments Act


 and section
711.041 of the Texas Health and Safety Code.


 Specifically, the Thompsons sought
the right of ingress and egress to the cemetery through the historic route that traversed
over the Winkelmann property and the right to conduct future burials at the cemetery. 
The Thompsons also sought damages for intentional infliction of emotional distress,
invasion of privacy, trespass, assault, tortious interference with an existing contract,
breach of fiduciary duty, and negligent misrepresentation.
          The Winkelmanns counterclaimed for a declaratory judgment, common law
fraud, an action to quiet title, intentional infliction of emotional distress, and abuse
of process. In their counterclaim for declaratory judgment, the Winkelmanns asserted
that the Thompsons’ request for ingress and egress to and use of the cemetery “vastly
exceeds Texas law,” and requested a declaration that (1) set out “reasonable ingress
and egress for the purpose of visiting the private burial grounds”; (2) limited the
“right of access extends only to visitation during reasonable hours and only for
purposes usually associated with cemetery visits”; and (3) allowed the Winkelmanns 
to designate “the route for reasonable ingress and egress to the burial grounds . . . [as]
the owner of the land surrounding the burial site.” In their prayer for relief, the
Winkelmanns asked the court to deny the Thompsons’ “request for an easement on
the Winkelmann property” and “[d]eclare that the Winkelmanns have the right to
determine the location for ingress and egress to the burial sites.”
          The Winkelmanns filed a motion for summary judgment on the issue of the
right to future burials, which the trial court granted. However, the trial court’s
summary judgment order also stated, “IT IS FURTHER ORDERED that
Defendants/Counter-Plaintiffs, Sam A. Winkelmann, Jr., in his individual capacity,
Ginger Winkelmann and Manuel Vargas, Jr. are dismissed and are no longer parties
to this lawsuit.” After the partial summary judgment, but before trial on the
remaining claims, appellants nonsuited all claims except for the request for
declaratory judgment and the claim for intentional infliction of emotional distress.
          At trial on March 22, 2006, the Thompsons requested a declaratory judgment
for the court to declare a route, either route A or route B, to allow them access to
Island Cemetery. The Thompsons presented evidence that the traditional access to
Island Cemetery was across the historic route taken over the Winkelmann property,
as described above. The historic route was designated at trial as route A. The
Thompsons also presented an alternate route, designated route B, which reached
Island Cemetery through a route along the Winkelmann property, but without passing
close to the residences or barns on the Winkelmann property. 
          Although the trial began with only routes A and B as the possible routes, the
Winkelmanns offered, mid-trial, a third option that was identified as route C. During
the Thompsons’ case-in-chief, Sampson Thompson, Jr., was the first witness. During
the cross-examination of Sampson Thompson, Jr., the Winkelmanns’ trial counsel
asked Thompson if visitors to Island Cemetery could access the cemetery by coming
down the land owned by the Ned Thompson Estate and then turning onto the
Winkelmann land. Counsel also asked Thompson why he did not want to use the
land owned by the Ned Thompson Estate to access the cemetery. This was the first
time the issue of a right of ingress or egress over the land owned by the Ned
Thompson Estate was raised. After the Thompsons rested, the Winkelmanns
presented Sam Winkelmann, Jr., as a witness. Winkelmann described a route for
ingress and egress to the cemetery, later identified as route C, that began at County
Road 450, went through the land owned by the Ned Thompson Estate in a straight
line to the back of the tract, and then cut across the tract toward the cemetery in the
Winkelmann tract. The Thompsons did not object to this testimony.
          After Sam Winkelmann, Jr.’s testimony, the trial was continued for three
weeks, until April 12, 2006, when the Winkelmanns presented evidence from a
licensed surveyor, Randy Stroud. Stroud testified that he had examined and surveyed
the cemetery and the Winkelmann tract. He made plats showing the cemetery and its
dimensions. Stroud’s plats showed route A, which was the route used in the past;
route B, the alternate route along the Winkelmann property; and route C, described
by Winkelmann as the route that traversed over the land owned by the Thompson
trust. Stroud also determined the length of each of the proposed routes. The
Thompsons objected on the basis that the Winkelmanns had not disclosed the maps,
plats, or mental impressions of Stroud, a testifying expert, prior to trial. The trial
court overruled the objection by explaining that the Thompsons were not surprised
because the issue of the location of the cemetery access was the key issue in the trial. 
The trial court did, however, allow the Thompsons two hours to review Stroud’s
plats.
          The Thompsons presented the testimony of Sampson Thompson, Jr. during
their rebuttal. Thompson testified that he and the other plaintiffs were not the owners
of the Ned Thompson tract, which he said was owned by the Ned Thompson Estate. 
He further stated that not all of those with an interest in the property were parties
before the court.
          After the trial, but before entering a final written judgment, the trial court found
that the Thompsons were entitled to reasonable rights of ingress and egress to Island
Cemetery. The court also found that the Winkelmanns’ proposal, route C, was the
reasonable alternative and that the issue had been tried by consent. The trial court
also acknowledged that while the Thompsons were not “the owner[s] in fee” of the
property through which route C traversed, the court had the authority to designate
route C over the Thompson tract as the means of reasonable access to Island
Cemetery. The trial court rendered a final written judgment declaring that the
reasonable route of ingress and egress was route C.


 
 
The Health and Safety Code
          In their third issue, the Thompsons contend that “[t]he trial court’s decision to
order a route to the cemetery across Appellants Thompsons’ property does not
comport with Texas law and results in an unconstitutional taking of said land.”



          The trial court applied section 711.041 of the Texas Health and Safety Code,. 
Section 711.041, entitled “Access to Cemetery,” provides,
(a)Any person who wishes to visit a cemetery or private burial
grounds for which no public ingress or egress is available shall
have the right to reasonable ingress and egress for the purpose of
visiting the cemetery or private burial grounds. This right of
access extends only to visitation during reasonable hours and only
for purposes usually associated with cemetery visits.
 
(b)The owner or owners of the lands surrounding the cemetery or
private burial grounds may designate the routes of reasonable
ingress and egress.

Tex. Health & Safety Code Ann. § 711.041 (Vernon 2003).
          Section 711.041 is applicable to property that surrounds, is adjacent to, or is
contiguous with the actual cemetery grounds. Compare Davis v. May, 135 S.W.3d
747, 749 (Tex. App.—San Antonio 2003, pet. denied) (holding imposition of
easement was not unconstitutional taking because Davis’s property surrounded
cemetery) and Meek v. Smith, 7 S.W.3d 297, 301 (Tex. App.—Beaumont 1999, no
pet.) (holding imposition of easement did result in improper taking because “actual
cemetery grounds involved are not surrounded by, adjacent to, nor contiguous with
the Meeks’ property”). Section 711.041 is applicable to older cemeteries previously
controlled by common law. According to an attorney general opinion responding to
an inquiry regarding the application of chapter 711 of the Health and Safety Code to
older cemeteries dedicated under the common law, the attorney general stated that
“Section 711.041 requires the owner of a cemetery or private burial ground to provide
reasonable public access for visiting purposes.” Op. Tex. Att’y Gen. No. JC-0355
(2001) (emphasis added).
          The underlying authority for the decision in Davis and the attorney general
opinion is Houston Oil Co. v. Williams. 57 S.W.2d 380, 384–85 (Tex. Civ.
App.—Texarkana 1933, writ ref’d). In Williams, the court described the common law
rights associated with cemeteries: 
It appears to be the rule that, where property has been actually
appropriated either as a private family burying ground or as a public
cemetery, it cannot in either instance be inherited or conveyed as other
property is done so as to interfere with the use and purposes to which it
has been devoted. . . . “When once dedicated to burial purposes, and
internments have there been made, the then owner holds the title to some
extent in trust for the benefit of those entitled to burial in it, and the heir
at law, devisee, or vendee takes the property subject to this trust.”

Id. (quoting Hines v. Tennessee, 149 S.W. 1058, 1059 (Tenn. 1911)). 
In pertinent part, the trial court’s findings of fact determined,
1.A cemetery exists on land owned by the Fannie Gayle
Winkelmann Marital Trust . . . 
 
3.The land on which the Cemetery is located was historically part
of a tract of land that was acquired by Ned Thompson in 1879. 
That tract of land is . . . referred to herein as the “Ned Thompson
Tract.” The Ned Thompson Tract has historically been used for
cemetery purposes, including ingress and egress.
 
4.The portion of the Ned Thompson Tract not presently owned by
the Fannie Gayle Winkelmann Marital Trust is owned by the heirs
of Ned Thompson, including The Reverend Sampson Thompson,
Jr., a plaintiff in this case. 

Further, the trial court stated in a conclusion of law, as follows,
4.The Ned Thompson Tract, by its historic use and devotion for
cemetery purposes including ingress and egress, became burdened
with the easements, licenses, and similar rights and restrictions
applicable to lands used for cemetery purposes.

One of the trial court’s other conclusions of law was that section 711.041 of the
Health and Safety Code controls the disposition of the issues related to access to
Island Cemetery. 
          The trial court ordered a right of access to Island Cemetery over land owned
by the Winkelmann Trust, which was land that was adjacent to and contiguous with
the cemetery and therefore subject to the access rights guaranteed by the Health and
Safety Code. See Davis, 135 S.W.3d at 749; Meek, 7 S.W.3d at 301. However, the
trial court also ordered access to that route over the Thompsons’s land, which does
not surround and is not adjacent to or contiguous with the cemetery. See Davis, 135
S.W.3d at 749; Meek, 7 S.W.3d at 301; Op. Tex. Att’y Gen. No. JC-0355. It is
undisputed that neither the appellees nor the Thompson Trust own the cemetery. Cf.
Op. Tex. Att’y Gen. No. JC-0355 (stating that owner of cemetery must provide
access). Because the Thompson tract does not surround, is not adjacent to, and is not
contiguous with the actual cemetery grounds, and the Thompsons do not own the
cemetery, we conclude that the trial court had no authority to order a right of ingress
or egress over the Thompson tract. See Davis, 135 S.W.3d at 749; Meek, 7 S.W.3d
at 301; Op. Tex. Att’y Gen. No. JC-0355.
          We sustain that portion of the Thompsons’ third issue concerning the trial
court’s authority to enter the judgment declaring a right of ingress and egress over the
land of the Ned Thompson Estate.
Summary Judgment
          In their first issue, the Thompsons contend that the trial court erred by granting
summary judgment on the Thompsons’ personal injury claims and “dismissing
appellees Ginger Winkelmann, Manuel Vargas, Jr., and Sam Winkelmann, in his
individual capacity, as parties to the lawsuit when said issues/claims were not
expressly presented in the Appellees’ Motion for Summary Judgment.”
          Generally, a summary judgment motion “must stand or fall on the grounds
expressly presented in the motion.” McConnell v. Southside Indep. Sch. Dist., 858
S.W.2d 337, 341 (Tex. 1993). Although “[g]rounds may be stated concisely, without
detail and argument[,] . . . they must at least be listed in the motion.” Id. at 340–41. 
          Prior to trial, the Winkelmanns moved for summary judgment on the
Thompsons’ claim for the right to conduct future burials at the Island Cemetery and
on the claim for access to Island Cemetery, which the trial court granted. Thus, the
Thompsons are correct that the Winkelmanns did not move for summary judgment
on the Thompsons’ various tort claims against the individual appellees, on which the
trial court nevertheless ruled in granting partial summary judgment to the
Winkelmanns. However, after the summary judgment was entered and prior to trial,
the Thompsons nonsuited all of their tort claims except the intentional infliction of
emotional distress claim based on Sam Winkelmann, Jr.’s having blocked their access
to the cemetery with the grader.


 
          The Texas Supreme Court has addressed the rights of plaintiffs to take a
nonsuit after entry of partial summary judgment against them, stating: 
In Texas, our general rule is that plaintiffs have the right to take a
nonsuit at any time until they introduce all evidence other than rebuttal
evidence. Such a nonsuit may have the effect of vitiating earlier
interlocutory orders. A decision on the merits, such as a summary
judgment, however, is not vitiated. This includes partial summary
judgments.
 
. . . . To give any force to the partial summary judgment provisions,
those judgments must withstand a nonsuit. A partial summary judgment
is a decision on the merits unless set aside by the trial court. It becomes
final upon the disposition of the other issues of the case. Once a judge
announces a decision that adjudicates a claim, that claim is no longer
subject to the plaintiff’s right to nonsuit. A nonsuit sought after such a
judicial pronouncement results in a dismissal with prejudice as to the
issues pronounced in favor of the defendant.

Hyundai Motor Co. v. Alvarado, 892 S.W.2d 853, 854–55 (Tex. 1995) (citations
omitted). Because the Thompsons nonsuited their personal injury claims after the
trial court had adjudicated the claims, those issues decided for the Winkelmanns were
dismissed with prejudice. See id. 
          We overrule the Thompsons’ first issue.
          Because of our disposition of the first and third issues, we do not reach the
second issue that concerns a challenge to the admission of evidence.    
Conclusion
          We reverse that portion of the judgment declaring that the Thompsons must use
land owned by the Ned Thompson Estate to access the cemetery. We remand this
cause to the trial court for further proceedings not inconsistent with this opinion. All
pending motions are dismissed as moot.
 

                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Taft, Keyes, and Alcala.